## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RUSASENE WATSON, | |
| Plaintiff, | |
| v. | Civil Action No.:  JRR-22-308 |
| GAIL WATTS,<br>MS. WHITE, | |
| Defendants. | |

### MEMORANDUM OPINION

Defendant Gail Watts filed a Motion to Dismiss, or in the Alternative, for Summary Judgment in response to this civil rights complaint.  ECF No. 9.  Although Plaintiff was advised of his right to file an opposition or other response, and of the consequences of failing to do so, he did not file a response.  ECF No. 10.  No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons stated below, Defendant Watts' motion, construed as a motion to dismiss shall be granted and the claim against Ms. White shall be dismissed.

### BACKGROUND

**Complaint Allegations**

Self-represented Plaintiff Rusasene Watson, who at all times relevant to the complaint was incarcerated at the Baltimore County Detention Center ("BCDC"), filed this civil rights complaint on February 4, 2022.  He raises nine claims in his complaint, one of which was previously dismissed.[1]

**A.      Claim One - failure to protect from violence**

---

[1]      On initial review of Watson's complaint, this Court dismissed his claim against Judge Cahill on judicial immunity grounds.  ECF No. 3.

On March 2, 2021, Watson claims he was attacked by another inmate on "section 2G between the hours of 4 and 8 p.m." ECF No. 1 at 2. He claims the attack could have been prevented because he asked unnamed correctional officers to move him to another cell after he and his assailant had argued earlier that morning. *Id.* Watson alleges that although he told "the officer working the bubble" that his assailant had threatened him multiple times, he was never moved. *Id.* The failure to move him allegedly resulted in Watson fighting this inmate. *Id.*

**B.      Claim Two – free practice of religion**

Watson claims he was deprived of all religious services because there are no religious services offered at BCDC. ECF No. 1 at 2. According to Watson, the lack of religious services violates his First Amendment right and the BCDC handbook. *Id.* Watson alleges that this absence of any opportunity to attend religious services "has been going on before the pandemic." *Id.*

**C.      Claim Three – access to courts**

Watson claims that BCDC does not have a proper law library for detainees to study the applicable law for their criminal cases. ECF No. 1 at 2. In Watson's view, this amounts to "a clear case of conflict of interest between the State's attorney and BCDC to keep inmates ignorant of the law and eventually be convicted." *Id.* at 3.

**D.      Claim Four – meals**

Watson alleges that food served at BCDC "is always ice cold every single meal." ECF No. 1 at 3. While the BCDC handbook states that meals are to be served in individual thermal trays, Watson alleges that this has not been the practice for "several months" prior to Watson's complaint. *Id.* Rather, meals are served in "cardboard carry out boxes or disposable trays." *Id.* He claims the meals are left on the "feed up cart" for an hour and "by the time the meals are distributed the food is frozen." *Id.* Watson alleges further that "they feed us spoiled meats and

2

rotten fruits every single day." *Id*. Watson alleges that because the food made him ill, he elected become a vegan, but that only served to "starve [him] even more because now [he is] fed a block of cheese and bread, rotten fruit and 3 cookies." *Id*. He claims that the poor quality of the food has made him sickly and adds that the "department in charge of the food we eat also run[s] the commissary" which he alleges is a "conflict of interest." *Id*. He explains that they "starve us and feed us rotting food so we buy their overpriced foods" in the commissary. *Id*.

### E.   Claim Five – mental health care

From September 23 to October 18, 2021, Watson was on suicide watch. ECF No. 1 at 3. He alleges that Ms. White,[2] who worked in the mental health unit, was "unprofessional and disrespectful." *Id*. at 4. He claims that "[o]ne day she asked me and a couple other people 'why don't you just kill yourself to make things easier for us and the world.'" *Id*. Watson refused to speak with Ms. White and instead spoke with "another mental health person name[d] Lauren." *Id*. When Ms. White came to Watson to speak with him again, he told her he did not want to talk to her and would only speak with Lauren. *Id*. Watson implies that Ms. White put him back on suicide watch as a result of his refusal to talk to her. *Id*. According to Watson, when he told Ms. White he was "going to see to it that she was fired for what she did," Ms. White responded that she did not care because "with [her] credentials [she] can go anywhere." *Id*.

### F.   Sixth Claim – conditions of confinement claim, sanitation

Watson alleges that correctional officers are responsible for sanitation inspections to include inspection of "showers, toilets, dayroom, etc." ECF No. 1 at 5. According to Watson, these inspections never happen. *Id*. He alleges that mold is growing in the showers and the toilets in the dayroom are "covered in urin[e], boogies, spit, etc." *Id*. Watson believes these conditions

---

[2]        No response has been filed on behalf of Ms. White.

violate provisions in the Inmate Handbook and have placed him in fear for his life and health. *Id*. He adds that there are "people who test positive for COVID-19 who are still housed with inmates who tested negative." *Id*. Further, he claims there is human waste on the wall because "an inmate threw his own stool on another inmate" and that it has remained on the wall for a month. *Id*.

**F.      Seventh Claim – understaffing**

According to Watson, BCDC is so understaffed that he has missed multiple court dates. ECF No. 1 at 5. He alleges that in October of 2021, a warrant was issued for him because he did not show up for a court date. *Id*. Watson has been at BCDC since June 24, 2021, and claims "this has happened multiple times." *Id*. Watson is concerned that issuance of failure to appear warrants against him, affects the determination of his suitability for bail. *Id*. He adds that the BCDC staff "use COVID-19 to say we can't go to court or get proper rec time all because they are short staffed." *Id*.

**G.      Eighth Claim – conditions**

Watson resides in the protective custody unit at BCDC and claims that the officers working in that area regularly fall asleep on the job because they are overworked. ECF No. 1 at 6. According to Watson, inmates on protective custody are let out of their individual cells into the dayroom for recreation one cell at a time. *Id*. Despite this requirement, Watson recalls that on January 29, 2022, he was locked out of his cell by the officer working "the bubble" and she let another inmate out of his cell. *Id*. Watson states that he was "clearly put in harm's way by BCDC staff" because they were sleeping on the job. *Id*.

An additional danger is created "by screeming [sic] out peoples [sic] narcotic medications." ECF No. 1 at 6. According to Watson, this enables other inmates to identify which inmates have access to narcotics making them vulnerable to exploitation. *Id*. Watson does not allege that he

was prescribed narcotics, nor does he allege that he was targeted as a result of this alleged practice. Watson does, however, allege that another inmate was able to use his name to buy commissary items. *Id.* He also describes an assault on an inmate named Dougie Sutton by inmate Joshua Brown. *Id.*

As relief, Watson seeks monetary damages and an order requiring his release from BCDC while he awaits trial.

**Defendant's Response**

Defendant Gail Watts, who is the director of BCDC, seeks dismissal of the complaint against her and raises the following defenses. Watts argues that Watson has not exhausted administrative remedies prior to filing his lawsuit. ECF No. 9-1 at 1-2. She also states that the claims against her are grounded in a theory of *respondeat superior*, which does not apply to § 1983 claims. Additionally, in Watts' view, the complaint fails to allege deliberate indifference to a substantial risk of serious harm; nor does it allege an actual injury. Watts also contends that she is entitled to avail herself of a qualified immunity defense. *Id.*

**STANDARDS OF REVIEW**

**A.    Motion to Dismiss**

Defendant's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside

of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222(4th Cir. Nov. 29, 2016) (per curiam). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth*., 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp*., 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004,

2011 Supp.).  This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id*. at 165, 167.

**B.      Summary Judgment**

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion.  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004).  The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

7

Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id*. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Id*. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because Watson is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## C.    1983 Claims

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.  It is well established that the doctrine of respondeat superior does not apply in § 1983 claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

## DISCUSSION

### A.    Exhaustion of Administrative Remedies

Defendant raises the affirmative defense that Watson failed to exhaust administrative remedies prior to filing this lawsuit.  ECF No. 9-1 at 6.  The administrative remedy procedure applicable to BCDC inmates requires them to first request form #118 or speak with staff to seek an informal resolution.  ECF No. 9-10 at 2-3.  If a form #118 is submitted, the inmate should receive a response within 10 days of receipt.  *Id*. at 3.  "If the complaint cannot be resolved

informally, the inmate may request an Inmate Complaint Form #200." *Id*. This form should include all steps taken to informally resolve the complaint. *Id*. Inmate Complaint Forms #200 must be placed in the housing unit mailbox or given to a supervisor. *Id*. A response to the $200 form is due 15 days from the date of receipt. *Id*.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that "[a]n inmate must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable: an administrative procedure is not available when officers are "unable or consistently unwilling to provide any relief to aggrieved inmates," the procedure is "so opaque that it becomes, practically speaking, incapable of use," or "prison administrators thwart inmates from taking advantage of [filing grievances] through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

Although Defendant Watts generally argues that Watson admits he did not exhaust administrative remedies prior to filing suit, there is no such admission included in Watson's complaint. Further, as an affirmative defense, were the Motion being treated as one for summary judgment, it would be incumbent upon Defendant to present evidence that Watson failed to avail himself of administrative remedies. However, as set forth earlier, the court construes the Motion as one to dismiss, and Plaintiff need not plead exhaustion of remedies. *Moore v. Bennette,* 517 F.3 717 (4th Cir. 2008).

## B.      Personal Participation

Nowhere in the complaint does Watson allege that Watts committed any wrong-doing; rather, he appears to have named her as a defendant simply because of her position as director. As noted, a theory of *respondeat superior* is inapplicable to claims raised under 42 U.S.C. § 1983. Even if the complaint could be construed to assert a supervisory liability claim, it fails.

To the extent Watson implies that Watts is responsible for the lack of congregate worship, the inadequate law library, overcrowding, poor food quality, and the general dereliction of staff who work there, his claims fail to state that Watts had knowledge of the alleged unconstitutional conditions and that any injury he suffered was a result of her failure to act. Watson offers no factual allegations from which it might be inferred that he made Watts aware of any of the conditions in which he bases his claims. Further, as to many of his claims, Watson has failed to allege that he suffered any injury and further that such injury was due to Watts' action or inaction. While Watson does mention injuries suffered by other inmates, he lacks standing to assert a claim on behalf of another inmate. For these reasons the claims against Watts will be dismissed.

## C.      Claim against Ms. White

11

As noted, there has not been a response filed on behalf of Defendant White.  Under the provisions of 28 U.S.C. § 1915(e)(2), a case shall be dismissed at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  Watson's claim against Defendant White fails to state a claim.

The only allegation asserted against Defendant White is that she told Watson to "go ahead and kill himself" or words to that effect.  While the Court is inclined to agree with Watson that the comment was unprofessional, in this instance, the alleged words alone do not amount to a constitutional rights violation. But see  *Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977); *see also DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) ("Courts treat an inmate's mental health claims just as seriously as any physical health claims.").

> [A prisoner] is entitled to psychological or psychiatric treatment if a physician or other health care provider, exercising ordinary skill and care at the time of observation, concludes with reasonable medical certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial.

*Bowring*, 551 F.2d at 47.  The *Bowring* court further concluded that the right to such treatment is based upon the essential test of medical necessity, not mere desirability.  *Id*. at 48.

Here, there is no indication that the statement made by Defendant White adversely impacted Watson such that his symptoms of mental illness, *i.e.*, depression with suicidal thoughts, worsened.  Indeed, Watson seems to imply that Defendant White's decision to place him on suicide watch again was inappropriate under the circumstances.  In short, Defendant Watson has failed to allege a cognizable injury.  The claim against Defendant White shall also be dismissed.

12

_____8/24/22_____                    _____/S/_____
Date                                                                    Julie R. Rubin
                                                                        United States District Judge